UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 4:15-cv-01966-RBH |
| | ) | |
| Legacy Development SC Group, LLC, | ) | |
| Chapter 7 - BR Case No. 12-06435-DD | ) | |
| Adv. Pro. No. 14-80082-DD | ) | |
| | ) | |
| Debtor, | ) | |
| _____ | ) | **ORDER** |
| | ) | |
| Richard L. Vice and Dinah B. Vice, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Michelle L. Vieira, Chapter 7 Trustee for | ) | |
| Legacy Development SC Group, LLC, | ) | |
| | ) | |
| Appellee, | ) | |
| _____ | ) | |

This matter is before the Court on appeal of Appellants, Richard L. Vice and Dinah B. Vice, ("Appellants" or "Vices") from an order issued by the United States Bankruptcy Court for the District of South Carolina granting summary judgment in favor of Appellee, Michelle L. Vieira, Chapter 7 Trustee for Legacy Development SC Group, LLC ("Appellee" or "Trustee"). For the reasons set forth below, the Court hereby reverses the Bankruptcy Court's order granting summary judgment in favor of Appellee, Michelle L. Vieira, and remands this matter for further proceedings.

**Factual and Procedural Background**

This appeal arises from an adversary proceeding brought by Appellee, Michelle L. Vieira, Chapter 7 Trustee for Legacy Development SC Group, LLC ("Trustee") against Appellants, Richard L. Vice and Dinah B. Vice, for breach of contract for failure to make payments on a promissory

note. The Bankruptcy Court granted summary judgment in favor of the Trustee on the breach of contract claim and awarded judgment in the amount of $286,665.62, with interest accruing at $70.83 per diem. In its Amended Order Granting the Trustee's Motion for Summary Judgment, the Bankruptcy Court issued Findings of Fact [ECF #4-1], which are not challenged in this appeal. The Bankruptcy Court's Findings of Fact are as follows:

1. Legacy Development SC Group, LLC ("Legacy" or "Debtor") is a limited liability company organized and existing under the laws of Florida. Compl. ¶ 1; Answer ¶ 2.

2. Ronald and Beverly LeGrand co-own 53.75% of Legacy. C/A No. 12-06435-dd; Dkt. 12.

3. Legacy and [the Vices] entered into a real estate purchase agreement on March 26, 2008. Pl's Mem. Supp. Mot. Summ. J., Ex. G; Def.'s Obj. Mot. Summ. J., Ex. A.

4. On April 8, 2008, the Vices purchased a parcel of real property from Legacy for $670,000. Compl. ¶ 12; Answer ¶ 7.

5. As part of the transaction, the Vices signed a promissory note ("Note") in favor of Legacy for $170,000. Compl. ¶ 13; Answer ¶ 8.

6. The Note provides for interest accruing at 5% per annum until the maturity date, and 15% thereafter. Pl.'s Mem. Supp. Mot. Summ. J., Ex. A.

7. The Note also provides that if it is "placed in the hands of an attorney for collection or is collected through any legal proceedings, Borrower promises to pay all expenses of collection and reasonable attorney's fees incurred by Lender." *Id*.

8. In November 2008, the Vices received a letter from LeGrand verifying the payoff amount of the Note and advising them of the option to pay off the Note early at a discount. Def.'s Obj. Mot. Summ. J., Ex. B.

2

9. On October 16, 2012, an involuntary petition under chapter 7 of the Bankruptcy Code was filed against Legacy. C/A No.12-06435-dd; Dkt. 1. The Court entered the Order for Relief on November 13, 2012, and Michelle Vieira was appointed trustee. *Id.*, Dkt. 7.

10. The Note matured on April 15, 2013. Pl's Mem. Supp. Mot. Summ. J., Ex. A. The Vices have not made any payments on the Note. Compl. ¶ 18; Answer ¶ 11.

11. Sometime after it matured, the Trustee provided written notice to the Vices of the default and made a written demand for payment. Compl. ¶ 19; Answer ¶ 12.

12. The Vices have not paid the Note and refuse to pay. Compl. ¶ 20; Answer ¶ 13.

13. On August 8, 2014, the Trustee filed this adversary proceeding to enforce the Note. Dkt. 1.

14. The Vices timely responded, conceding the underlying facts asserted by the Trustee but arguing that the Note is unenforceable due to the circumstances surrounding the Vices' signing of the Note and real estate purchase agreement. Dkt. 5.

15. In late 2007, Ronald Vice attended a seminar conducted by Ronald LeGrand and learned about Legacy's development, Legacy Estates at Barefoot, in North Myrtle Beach, South Carolina. Def.'s Obj. Mot. Summ. J., Aff. Vice ¶¶ 3-4.

16. Shortly thereafter, the Vices visited Legacy Estates at Barefoot and met with Kenneth H. Gwynn ("Gwynn"), Legacy's manager. *Id.* ¶¶ 4-6.

17. Gwynn provided the Vices with marketing materials for the development and told the Vices that they would be entitled to amenities, including a $75,000 membership to the Dye Country Club at Barefoot, a Salmon Falls trip for two, spa privileges, and concierge services upon purchasing a lot in the development. *Id.* ¶¶ 6, 7.

18. The Vices bought the property with the intention of

3

     building a house on it. *Id*. ¶ 16.

19. The Vices were told by Gwynn that the portion of the purchase price represented by the Note was "for the purpose of marketing." *Id*. ¶ 10. Gwynn represented that the Note would be enforced only upon sale of the property. *Id*.

20. After the Vices received notification of the payoff option from LeGrand in 2008, the Vices contacted Gwynn, who confirmed that they only need pay the Note if the property was sold. *Id*. ¶ 14.

21. The Vices have never received the promised amenities and the development has not been completed as was represented in the marketing materials. *Id*. ¶ 15.

[Amended Order granting Plaintiff/Trustee's motion for summary judgment, ECF #4-1, at 2-4].

  Judgment in favor of the Trustee in the amount of $286,665.62, with interest accruing at $70.83 per diem, was entered on April 23, 2015. The Vices timely filed a notice of appeal from the Bankruptcy Court order and judgment on May 8, 2015. The Vices and the Trustee each filed briefs and statements regarding oral argument. The Vices requested oral argument; the Trustee stated oral argument was not needed. The Court agrees with the Trustee. The facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.

### **Standard of Review**

  Title 28 U.S.C. § 158 authorizes district courts to act as appellate tribunals for final orders from bankruptcy courts. 28 U.S.C. § 158(a)(1). A district court reviews the bankruptcy court's findings of fact for clear error, and its legal conclusions de novo. *See Nat'l Heritage Found., Inc. v. Highborne Found.*, 760 F.3d 344, 347 (4th Cir. 2014); *SG Homes Assoc., LP v. Merinucci*, 718 F.3d

327, 334 (4th Cir.2013).

Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings in the Bankruptcy Court. Fed. R. Bankr.P. 7056.  Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.*  However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875.  Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue

for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## Analysis

The Vices argue the Bankruptcy Court erred in granting summary judgment in favor of the Trustee on the Trustee's claim for breach of contract for failure to make payments on a promissory note. The primary issue in this appeal concerns the application of the parol evidence rule to the Trustee's breach of contract claim. The Vices argue that the promissory note ("Note") is unenforceable because, among other things, they were fraudulently induced to sign the Note based on the promise of amenities and the assurance that they would not be responsible to pay the Note unless the property was sold or in the event that the development was not completed. [Richard L. Vice Affidavit, ECF #3-4, at 15-16].

The Bankruptcy Court held that the parol evidence rule barred the Vices' testimony and allegations of fraudulent inducement because none of the exceptions to the parol evidence rule applied. The Bankruptcy Court also held that the non-reliance clause found in paragraph 10.7 of the Purchase Agreement prevented the Vices from being able to establish justifiable reliance in support of their claim that the Note was unenforceable due to the Debtor's fraudulent misrepresentations. The Bankruptcy Court further held that the Vices' defenses of unclean hands, *in pari delicto*, and violation of the implied covenant of good faith and fair dealing did not apply because the Vices did not establish any evidence of fraud or wrongdoing that was not barred by the parol evidence rule. Additionally, with respect to the *in pari delicto* defense, the Bankruptcy Court held that because the Vices intended to build a house on their lot, there was no evidence that they participated in any scheme to fraudulently inflate land values. Finally, as to the claim that enforcement of the Note violates the implied covenant of good faith and fair dealing, the Bankruptcy Court found that

because the Trustee was acting within the parameters of the agreed upon contract, there was no breach of the implied covenant of good faith and fair dealing.

I.     Parol Evidence Rule

The Bankruptcy Court held that the parol evidence rule barred the Vices' testimony and allegations of fraudulent inducement because none of the exceptions to the parol evidence rule applied. Specifically, the Bankruptcy Court found that the fraudulent inducement exception to the parol evidence rule did not apply because the Vices' allegations of fraud amounted to nothing more than broken promises, which do not amount to fraud.

The parol evidence rule states that "where the terms of a written instrument are unambiguous, clear and explicit, extrinsic evidence of statements ... made contemporaneously with or prior to its execution are inadmissible to contradict ... vary or explain its terms...." *Graves v. Serbin Farms, Inc.*, 409 S.E.2d 769, 771 (S.C. 1991). However, "if the writing was procured by words and with a fraudulent intent of the party claiming under it, the parol evidence is competent to prove the facts which constitute the fraud." *Hansen v. DHL Labs., Inc.*, 450 S.E.2d 624, 626 (S.C. Ct. App. 1994). "To be actionable, a fraudulent misrepresentation must relate to a pre-existing fact." *Hansen*, 450 S.E.2d at 626. Although unfulfilled promises or statements as to future events do not amount to fraud, if at the time the promise is made, the party making the promise has no intention of keeping it, the promise then amounts to an actionable fraudulent misrepresentation of fact. *Id*.

In his affidavit submitted in opposition to the Trustee's motion for summary judgment, Richard Vice stated:

> In November 2008, Dinah and I received correspondence dated

7

> November 19, 2008 from LeGrand on behalf of the Debtor
> advising of an option to pay off the Note early at a discount. . .
> Upon receipt of the Letter, I contacted Gwynn for clarification.
> During my conversation with Gwynn, he represented that
> repayment would continue to not be required unless the property
> was sold and that repayment of the Note would not be required
> under any circumstances if the Development was never completed.

[Richard Vice Affidavit, ECF #3-4, at 16]. The November 19, 2008 letter stated:

> This is a letter to inform you that the period for which [you] can
> claim a 10% discount on repayment of your promissory note has
> been extended from one year to two years from the date of closing.
> This is due to various delays in the project which none of us could
> have predicted at the time this transaction was closed.
>
> The total principal amount of the note is One Hundred Seventy
> Thousand and 00/100 dollars ($170,000.00) dated 4/8/2008.
>
> This deadline for early repayment has been extended to 4/8/2010.
> In accordance with the signed 2nd addendum you are entitled to
> receive a discount of 10% of the principal of the note or Seventeen
> Thousand and 00/100 dollars ($17,000.00) and a waiver of the
> accrued interest of 5% for the two years the note would be
> outstanding.
>
> The total payoff of the note is less this discount of One Hundred
> Fifty Three Thousand and 00/100 dollars ($153,000.00) if paid on
> or before 4/8/2008.

[Letter dated November 19, 2008, ECF #3-4, at 32].

Based on the November 19, 2008 letter from the Debtor requesting early payment on the Note, a reasonable inference could be drawn that the Debtor, at the time the promise was made, had no intention of keeping the promise not to seek collection of the Note unless the property was sold. "The parol evidence rule was designed to prevent frauds, not to promote frauds by immunizing a party from claims arising out of his fraudulent misrepresentations." *Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 503 (S.C. Ct. App. 2003). Accordingly, viewing the evidence in the light

8

most favorable and drawing all reasonable inferences in favor of the Vices as the non-moving party, a genuine issue of material fact exists as to whether the Vices were fraudulently induced into signing the Note making summary judgment at this stage inappropriate.

The Vices also argue that the subsequent agreement exception to the parol evidence rule applies. The Bankruptcy Court held the subsequent agreement exception to the parol evidence rule did not apply because there was no evidence of a subsequent offer, acceptance, or consideration. "Although the terms of a completely integrated agreement cannot be varied or contradicted by parol evidence of *prior or contemporaneous* agreements not included in the writing, the rule does not apply to subsequent modifications." *Adamson v. Marianne Fabrics, Inc.*, 391 S.E.2d 249, 251 (S.C. 1990) (emphasis in original). "Written contracts may be modified orally." *Adamson*, 391 S.E.2d at 251. "A written contract may be modified by a subsequent agreement of the parties, provided the subsequent agreement contains all the requisites of a valid contract." *Sauner v. Public Serv. Auth. of South Carolina*, 581 S.E.2d 161, 166 (S.C. 2003). "The necessary elements of a contract are an offer, acceptance, and valuable consideration." *Sauner*, 581 S.E.2d at 166.

The Debtor's November 19, 2008 letter, along with Gwynn's alleged oral representations in November 2008, arguably constituted an offer to pay off the Note early for a 10% discount on the principal and provided the Note would not be collected unless the was property sold and in no event would the Note be collected if the development was not completed. The Vices argue that forbearance of legal action, i.e. forbearance of a lawsuit for fraudulent misrepresentation concerning the terms of the Note, constituted consideration for the subsequent agreement. The Vices argue that a reasonable inference could be drawn from the Vices' inaction that this forbearance of legal action was caused by, constituted acceptance of, and was in consideration of Gwynn's modification of the

9

terms of the Note through the offer of additional restrictions on the Note's repayment. Drawing all reasonable inferences in favor of the Vices, at the very least, there is a genuine issue of material fact as to whether the Vices had a subsequent agreement with the Debtor concerning the conditions under which repayment of the Note would be required.

Because there are genuine issues of material fact as to whether the Vices were fraudulently induced into executing the Note and whether a subsequent agreement modified the terms of the Note, summary judgment in favor of the Trustee on the breach of contract claim for failure to make payments on the Note was inappropriate. Accordingly, the Bankruptcy Court's order granting summary judgment in favor of the Trustee is reversed.

II.     Fraud - Justifiable Reliance

The Bankruptcy Court held that the non-reliance clause in paragraph 10.7 of the real estate purchase agreement prevented the Vices, as a matter of law, from establishing the justifiable reliance element of their claim that the Note was unenforceable due to the Debtor's fraud.

The real estate purchase agreement containing the non-reliance clause was signed by the Vices on March 26, 2008. The Note, which does not contain a non-reliance clause and does not reference the real estate purchase agreement, was executed on April 8, 2008. The Vices argue that the non-reliance clause in the real estate purchase agreement is framed in the past tense and should not apply to any statements or representations made after the execution of the real estate purchase agreement. This Court agrees.

The real estate purchase agreement non-reliance clause provides:

> You understand that any salesman representing us in this transaction does not have the authority to make any statements in conflict with or in addition to the information contained in the

> Agreement, and any other documents received from us and/or any real estate agent or broker, including without limitation, any representation regarding the investment, rental or resale potential of the Lot, and we . . . specifically disclaim any responsibility for such statements. Further, if any such statements were made, you acknowledge that you may avoid any and all obligations by you hereunder simply by not executing this Agreement. By execution of this Agreement, you affirm that you have not relied upon any such statements, if any, and waive any rights that you might have as a result of such statements unless they are incorporated into this Agreement.

[Real Estate Purchase Agreement, ECF #3-3, at 69]. The non-reliance clause, by its terms, is limited to statements occurring before the execution of the agreement on March 26, 2008. Thus, any statements or alleged misrepresentations made after the execution of the Agreement or contemporaneous with the execution of the Note two weeks later would not be barred by the real estate purchase agreement's non-reliance clause. Furthermore, the terms of the non-reliance clause appear to limit its application to reliance on representations concerning the real estate purchase agreement and would not apply to bar representations concerning the subsequently executed Note, which contains no reference to the real estate purchase agreement or the non-reliance clause. The Trustee has offered no authority for the Bankruptcy Court's broad application of the non-reliance clause found in the real estate purchase agreement.

The Vices further argue that the Bankruptcy Court erred by failing to look to the totality of the circumstances to determine whether the Vices' reliance was justified. Even if the real estate purchase agreement non-reliance clause was relevant to the issue of the Vices' justifiable reliance and the enforceability of the Note, "the precedent in South Carolina is to look to the totality of circumstances to determine whether reliance was justified." *Redwend Ltd. P'ship v. Edwards*, 581 S.E.2d 496, 504 (S.C. Ct. App. 2003). "Whether reliance is justified in a given situation requires an

evaluation of the circumstances involved, including the positions and relations of the parties." *Frewil, LLC v. Price*, 769 S.E.2d 250, 253 (S.C. Ct. App. 2015). "Issues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the triers of the facts." *Frewil, LLC*, 769 S.E.2d at 254. In this case, the Bankruptcy Court erred by relying exclusively on the non-reliance clause from the real estate purchase agreement. The Bankruptcy Court failed to consider the totality of the circumstances, including the Vices' allegations of fraud in the inducement, and resolved disputed issues of fact in favor of the Debtor and Trustee.

A general non-reliance clause does not prevent one from proceeding with allegations of negligent misrepresentation and fraud. *Slack v. James*, 614 S.E.2d 636, 641 (S.C. 2005). "A party should not be given the opportunity to free himself from an allegation of fraud by incorporating a generalized non-reliance clause into a contract." *Slack*, 614 S.E.2d at 641. Because there is a question of fact as to whether the Debtor fraudulently induced the Vices into executing the Note, the Bankruptcy Court erred in applying the non-reliance clause to find that the Vices could not establish justifiable reliance as a matter of law.

For each of the above reasons, the Court reverses the Bankruptcy Court's holding that the non-reliance clause found in paragraph 10.7 of the real estate purchase agreement prevented the Vices from establishing justifiable reliance as a matter of law.

III.     Remaining Defenses - Unclean Hands, *in pari delicto*, and Breach of Implied Covenant of Good Faith and Fair Dealing

The Bankruptcy Court granted summary judgment in favor of the Trustee on the Vices' defenses of unclean hands, *in pari delicto*, and breach of the implied covenant of good faith and fair

dealing. However, because there exists a genuine issue of material fact as to whether the Debtor and its agents had any intention of keeping their alleged promises to the Vices at the time the promises were made, summary judgment was also inappropriate on the Vices' defenses of unclean hands, *in pari delicto*, and breach of implied covenant of good faith and fair dealing. Additionally, with respect to the defense of *in pari delicto*, the Bankruptcy Court failed to draw all reasonable inferences in favor of the Vices when it concluded that there was no evidence of wrongdoing by the Vices because they bought the lot with the intention to build on it. The Bankruptcy Court improperly inferred that the Vices had no intention to resell the land even though there was no evidence offered in support of that inference. Even if the Vices bought the lot with the intention to construct a house and no intention to resell the property, viewing the evidence in the light most favorable to the Vices, a reasonable inference could be drawn that the Vices and the Debtor conspired to artificially inflate property values as both the Vices and the Debtor would stand to benefit from such a conspiracy. Accordingly, the Bankruptcy Court's order granting summary judgment in favor of the Trustee on the Vices' defenses of unclean hands, *in pari delicto*, and breach of implied covenant of good faith and fair dealing is reversed.

## Conclusion

For the reasons stated above, the Court **REVERSES** the Bankruptcy Court's order granting summary judgment in favor of the Trustee, **VACATES** the judgment, and **REMANDS** this matter to the United States Bankruptcy Court for the District of South Carolina for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

November 18, 2015                                             s/ R. Bryan Harwell
Florence, South Carolina                                      R. Bryan Harwell
                                                                             United States District Judge